# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PABLO CEDILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 2907 |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| J.C. PENNY CORPORATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Pablo Cedillo ("plaintiff"), has sued defendant J.C. Penney ("Penney's") in this diversity case, alleging that Penney's acted negligently in its response to an altercation which led to plaintiff's stabbing outside of Penney's at the North Riverside Mall. Penney's has moved for summary judgment, arguing that the undisputed facts show that it had no duty to protect plaintiff from a criminal act which occurred outside its premises [dkt 70]. For the reasons stated below, we enter judgment for Penney's.

**I.      Facts**

The facts are taken from Penney's Rule 56.1 Statement of Facts, except where noted.[1] On April 23, 2004, plaintiff and his wife, Carmen, and young daughter traveled by car to the North Riverside Mall after dinner.[2] After parking their car near the Penney's store entrance, they walked inside the store.[3] They then waited in line at a cashier's station together in order to exchange a pair

---

[1] Cited as SOF ¶ ___.

[2] SOF ¶ 6.

[3] SOF ¶ 7.

of jeans.[4] There were several customers ahead of them in line and they waited for approximately ten minutes before they were assisted.[5] While they were waiting in line, Juan Maldonado and Michael Denson entered the Penney's store, using the same entrance that plaintiff and his family had used.[6] Plaintiff made eye contact with these men at which time Michael Denson flashed a gang sign at plaintiff and asked him "what the f*** are you looking at?"[7] Plaintiff's wife did not hear this remark, but after her husband told her about it, she urged him to ignore Denson and Maldonado. Denson and Maldonado walked away from plaintiff.[8]

A few minutes later, plaintiff left his wife and daughter so that his wife could return the jeans and walked away to browse the store.[9] He testified at his deposition he was about 100 feet away from his wife at this point.[10] Almost immediately, he came across Maldonado and Denson. Denson asked plaintiff what his gang affiliation was to which plaintiff responded that he was not involved in a gang.[11] Plaintiff admitted in his deposition that this was not a loud exchange (no one was shouting) and that he did not notice anyone watching the encounter.[12] Carmen Padilla did not hear

---

[4] SOF ¶ 8.

[5] SOF ¶ 9.

[6] SOF ¶ 10.

[7] SOF ¶ 11.

[8] Carmen Cedillo Dep. at 37; SOF ¶ 12.

[9] SOF ¶ 13.

[10] Cedillo Dep. at 38.

[11] SOF ¶ 14.

[12] Cedillo Dep. at 74-75.

this exchange, nor did she see what occurred next.[13] Denson then bumped plaintiff in the shoulder and shoved his face with his right hand. Cedillo told him to "take it outside" and walked away from them towards the store entrance/exit.[14] He passed his wife on the way out of the store and told her to get the car as there was trouble.[15] Carmen Padilla left the store with the couple's daughter and plaintiff followed her out, trailed by Maldonado and Denson.[16]

Prior to leaving the store, neither plaintiff nor his wife alerted anyone from Penney's that there was a problem, although plaintiff clearly anticipated that there would be one when he asked Maldonado and Denson to "take it outside."[17] After leaving the store, plaintiff was punched in the nose by Denson and, after the two exchanged some more blows, stabbed twice.[18] Plaintiff's wife screamed for mall security and security guards came to the scene and secured the attackers who were later arrested by North Riverside police.[19]

**II.     Analysis**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[20] To prevail on a motion for summary judgment, then, a

---

[13] Carmen Padilla Dep. at 37.

[14] SOF ¶ 15.

[15] SOF ¶ 16.

[16] SOF ¶ 17.

[17] SOF ¶¶ 15, 18.

[18] SOF ¶ 19.

[19] SOF ¶ 21.

[20] Fed.R.Civ.P. 56(c).

party must present evidence that demonstrates the absence of a genuine issue of material fact.[21] A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] The party seeking summary judgment must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes shows an absence of a genuine issue of material fact.[23] The evidence presented by the non-movant is to be believed and all justifiable references are to be drawn in his or her favor.[24]

Two preliminary issues must be resolved prior to reaching the merits of Penney's summary judgment motion. First, Penney's has moved to strike plaintiff's affidavit which was filed as an exhibit to his response to Penney's motion for summary judgment. In this affidavit, plaintiff attempts to add facts which contradict or attempt to supplement his deposition testimony. For example, he stated in his deposition that he was in the store approximately ten to fifteen minutes before the attack occurred outside the store. In his affidavit, however, plaintiff stated that he was in the store about thirty minutes. In his affidavit, plaintiff emphasized how crowded and well-lit the store was and that the shoves by his assailants inside the store (prior to the stabbing outside the store) occurred within close proximity of the service desk. In his deposition, however, he stated he was about one hundred feet from the counter when then shoving began and that he did not think anyone noticed the encounter.

---

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp.*, 477 U.S. at 324.

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Any conflict between plaintiff's affidavit and his deposition testimony must be resolved in favor of the deposition testimony unless it can be demonstrated that plaintiff was mistaken.[25] Plaintiff has made no attempt to demonstrate why his testimony regarding the circumstances of his attack at his deposition differ from his affidavit. "[A]ffidavits, though signed under oath by the affiant, are typically written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy."[26] As that explanation is lacking here, the court strikes the affidavit.

The second matter is Penney's motion to strike plaintiff's response to its Rule 56.1 statement. Plaintiff originally did not respond at all to the statement in contravention of Local Rule 56.1. The court ordered him to do so. Unfortunately, his response still failed to comply with the Rule because it denied those facts asserted by Penney's without any citation to the record to support the denial. (Plaintiff instead denied those facts and demanded "strict proof thereof" as a response.) The Court ordered him again to comply with the Rule.[27] Plaintiff's second response to the Rule 56.1 Statement still does not comply with Rule 56.1 as plaintiff continues to deny several facts, but his citations to the record do not support those denials. However, the Court does not need to strike plaintiff's response in its entirety to resolve this motion.

Penney's argument is that it owed no duty to protect plaintiff from a criminal attack on him

---

[25]*Pourghoriashi v. Flying J*, 449 F.3d 751, 759 (7th Cir. 2006).

[26]*Beckel v. Wal-Mart Associates*, 301 F.3d 621, 623 (7th Cir. 2002.)

[27] Plaintiff's response was filed with the Clerk's Office, but not electronically as the Rules of the Court require, and not served on either the Court or Penney's prior to a scheduled oral argument on the motion for summary judgment. Accordingly, the Court struck the argument and sanctioned plaintiff's counsel for the time spent by one of Penney's attorney's to prepare for and attend the oral argument.

which occurred outside its store. Illinois law imposes no duty to protect others from the criminal conduct of a third party unless: (1) a special relationship exists between the parties; and (2) the criminal attack was reasonably foreseeable to Penney's.[28] Under Illinois law, a relationship between a business and its invitee is such a special relationship.[29] Illinois courts have held that the attack on plaintiff could be reasonably foreseeable to Penney's if Penney's had knowledge of previous similar acts sufficient to put it on notice that such an attack might occur again.[30] Although plaintiff asserts that other similar incidents occurred, the undisputed evidence in the case is to the contrary. Penney's witness, Len Hermanson, testified that he did not have any knowledge of prior similar instances. His testimony is corroborated by both police officers who testified that they did not know of any stabbing or physical attacks occurring at the North Riverside mall. Their own calls to the mall were limited to retail thefts and minor disturbances. Plaintiff himself did not know of any such attacks which had occurred in the past.

We turn, therefore, to what occurred in the store. Illinois courts have recognized that a duty can arise if there are sufficient facts to put defendants on notice that an intervening criminal act is likely to occur.[31] Could a jury find from the facts in the light most favorable to plaintiff that a stabbing attack outside the store was reasonably foreseeable to Penney's based on the altercation which occurred while plaintiff and his attackers were still inside the store premises? The record before us does not support such a finding. The first verbal exchange between plaintiff and his

---

[28]*Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 547 (1995).

[29]*Loomis v. Granny's Rocker Nite Club,* 250 Ill. App. 3d 753, 758, 620 N.E.2d 664, 668 (1993).

[30]*Mitchell v. Archibald & Kendall,* 573 F.2d 429, 433 (7th Cir. 1978), *citing Neering v. Illinois Central R.R. Co.,* 383 Ill. 366, 378 (1943); *Shortall v. Hawkeye's Bar & Grill,* 283 Ill. App. 3d 439, 443 (1st Dist. 1996).

[31]*Gill v. Chicago Park District,* 85 Ill. App. 3d 903, 905 (1st Dist. 1980).

attackers while he was still in line with his wife was quiet enough that she could not hear it. The subsequent shoving encounter took place approximately 85-100 feet away from the closest cashier and, by plaintiff's own admission, was not loud. This encounter also went unobserved by his wife. Neither plaintiff nor his wife told anyone from Penney's about what had occurred, or that they felt threatened by the attackers. Under these circumstances, Illinois courts have ruled that a duty to act to prevent the attack outside of the business premises simply does not exist.[32]

Plaintiff argues that this case is different from the ones cited above, but is analogous to *Shortall v. Hawkeye's Bar & Grill*, in which the Illinois appellate court reversed summary judgment entered against a tavern for failing to take actions to prevent a stabbing which occurred outside the tavern.[33] In that case, however, genuine issues of material fact existed concerning the issue of forseeability which are conspicuously missing here. For example, in *Shortall* there was evidence in the record that the bouncer at the tavern was aware that the fight had erupted and took no action. There was also evidence (from the plaintiff) that tavern employees witnessed the altercation when it began inside the tavern. However, plaintiff in this case does not offer any evidence that anyone witnessed what occurred inside the store. In fact, he testified that he did not believe that anyone witnessed the altercation; certainly his wife did not.

---

[32] *See Getson v. Edifice Lounge, Inc.*, 117 Ill. App. 3d 707, 712 (3d Dist. 1983) (holding that a bar owed a stab victim no duty, as there was no evidence that the stabbing attack outside the bar was reasonably foreseeable, despite knife carrying gang members being present in the bar prior to the incident); *See also Gill v. Chicago Park Dist.*, 85 Ill. App. 3d 903, 906 (1st Dist. 1980) (holding that a football club owed no duty to plaintiff, who was attacked by two assailants in a stairwell at Solider Field, where there was no evidence of any disruptions or acts of violence at Soldier Field on the day of the incident); *Rodgers v. Hook-Super X, Inc.*, 204 Ill. App. 3d 861, 864 (4th Dist. 1990) (holding that a drugstore owed a customer no duty, as there was no evidence that a mugging in the parking lot outside the store was reasonably foreseeable, despite assailants harassing a different customer in the store, for which they were asked to leave, prior to the incident); *Costa v. Gleason*, 256 Ill. App. 3d 150, 152 (1st Dist. 1993) (holding that where there was no evidence prior to shooting of previous disruptions, acts of violence, or warnings of any type, which would have given a tavern operator notice, operator owed no duty to protect a patron from being shot by a third party on the premises of the tavern).

[33] 283 Ill. App. 3d 439 (1st. Dist. 1996).

Plaintiff's last two arguments in opposition to this motion are equally unconvincing. First, plaintiff contends that the facts show that Penney's could be found negligent here because the mall security guards did not intervene fast enough to prevent the attack outside the Penney's once it began. Putting aside that there is virtually no evidence here about the timing or appropriateness of the guards' response (other than the police officers' testimony that they believed the mall guards had the situation under control by the time they arrived), the record is devoid of facts which show that Penney's employed, or had any control over these guards. Second, plaintiff argues that summary judgment should not be entered because there are facts in this record which showed that Penney's did not have its security cameras on during the incidents inside and outside of the store. Plaintiff contends that by installing these cameras, Penney's assumed a duty to him to keep them operational. Even assuming that such a duty was assumed by Penney's, and that having the cameras off proximately caused injury to plaintiff, plaintiff misstates the record. All the police record (upon which plaintiff relies) shows is that "nothing from the incident was captured on videotape from Penney's either inside or outside the store."[34] Thus, this record does not support plaintiff's factual assertion that the cameras were not operational but, instead, that the cameras did not capture evidence of the altercation.

---

[34] SOF, *Appendix I.*

Penney's has shown that there are no genuine issues of material fact for the jury to resolve, and that the facts in the record viewed in the light most favorable to the plaintiff entitle it to a judgment as a matter of law. Accordingly, the Court enters judgment in favor of defendant.

**IT IS SO ORDERED**

**ENTERED: February 15, 2008**

_____
**UNITED STATES MAGISTRATE JUDGE**